UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| 3BTECH, INC., *an Indiana corporation*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MARC HARRIS GARELICK, *an individual*; | ) | |
| and MEYER, OLSON, LOWY & MEYERS, | ) | |
| LLP, *a limited liability partnership*; | ) | |
| | ) | |
| Defendants. | ) | |

## **VERIFIED COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, 3BTech, Inc., by counsel, Burt, Blee, Dixon, Sutton & Bloom, LLP, and for its Verified Complaint against Defendants Marc Harris Garelick, and Meyer, Olson, Lowy & Meyers LLP, alleges and states as follows:

## *I.     INTRODUCTION*

This is a Civil RICO Action being brought by Plaintiff, 3BTech, Inc. ("3BTech"), which alleges herein, Defendants have been employed by, and/or, have associated themselves with an enterprise affecting interstate commerce, and have conducted and/or, participated in the enterprise's affairs, directly, and/or, indirectly, through a pattern of racketeering activity in violation of Title 18 U.S.C. § 1962(c) and (d). Plaintiff, 3BTech, submits that it is an entity that has been injured in its business or property by reason of a violation of § 1962, and therefore has the right to sue in this Court to recover treble damages and court costs under Title 18 U.S.C. § 1964(c).

3BTech brings this Verified Complaint for Damages for violation of Tortious Conversion, Tortious Interference with a Business Relationship, and violations of the

Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, against Defendants Marc Harris Garelick ("Mr. Garelick"), and Meyer, Olson, Lowy & Meyers LLP("MOLM") (collectively, the "Defendants"), and for such causes states:

## II.    NATURE OF ACTION

1.    This is a claim stemming from non-party Jie Wang's ("Ms. Wang") breach of trust in her position as accounting manager for 3BTech, through which she embezzled significant funds with the support and direction of her counsel, Mr. Garelick, and his law firm, MOLM, for the purpose of the Defendants prosecuting a family law matter in California against one of Plaintiff's principals and manipulating concessions from one of Plaintiff's principals in that family law matter.

2.    The scheme employed multiple distinct acts of fraud and theft from 3BTech and its subsidiaries, including: (1) the embezzlement of $1,600,000 from one of Plaintiff's subsidiaries' (DC 3B LLC, an Indiana limited liability company) accounts that was being held for the purchase of a particular property -- accordingly, the payment of costs to close the escrow and remove contingencies on the property was interrupted; (2) the unauthorized transfer of $200,000 from 3BTech to Hoverzon, LLC, a Nevada limited liability company, and subsequent transfer of $200,000 to Ms. Wang's family trust; (3) an unauthorized wage and salary commission to a family-owned joint account that was subsequently transferred to Ms. Wang's own personal account; (4) an unauthorized corporate credit card charge of $7,500; and (5) the seizure of corporate records, corporate checkbooks, and bank fobs (the "corporate property") from 3BTech and its subsidiaries.

3.    The unauthorized transfer of funds and seizing of corporate property amounts to multiple violations of the Indiana Code and the United States Code, including

conversion, tortious interference with a business relationship, and violations of the RICO Act, 18 U.S.C. § 1962.

4.      Furthermore, the unauthorized transfers of funds were undertaken with the foreknowledge and unlawful advice of MOLM, through its managing partner, Mr. Garelick, and, subsequently, some portion of the stolen funds was used to pay a retainer for the services of MOLM and Mr. Garelick in a contentious divorce proceeding (the "divorce action") filed by Ms. Wang against one of 3BTech's principals, Jianqing Zhu ("Mr. Zhu"), in California.

5.      Moreover, the unauthorized corporate credit charge of $7,500 was used to hire and pay forensic accountants hired by MOLM and Mr. Garelick to support the divorce action.

6.      And when 3BTech noticed the above malfeasance and demanded -- through communication directed to Ms. Wang's counsel, Mr. Garelick -- the return of its funds and corporate property, Defendants held up the return of the funds and corporate property to manipulate concessions from Mr. Zhu in the divorce action.[1]

## III.      JURISDICTION AND VENUE

7.      Exclusive federal subject matter jurisdiction exists in this matter pursuant to Title 28 U.S.C. § 1331 because Plaintiff assert claims under Title 18 U.S.C. § 1961, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), as well as 18 U.S.C. §

---

[1] In addition to making the demand of Ms. Wang for the return of the property, 3BTech, DC 3B LLC, and Hoverzon, LLC collectively assessed their individual damages, performed an accounting of the damages DC 3B LLC and Hoverzon, LLC incurred at the hands of 3BTech's employee (Ms. Wang), and resolved all disputes and claims between the three entities through an assignment of all claims by DC 3B LLC and Hoverzon, LLC against Ms. Wang to 3BTech for the purposes of settling liability among the three entities, streamlining future cost of litigation against Ms. Wang, and enabling the recovery of unified damages by 3BTech against Ms. Wang.

1005. Furthermore, federal subject matter jurisdiction is conferred by 18 U.S.C. § 1964(c), which creates the civil RICO cause of action.

8.      This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because 3BTech is an Indiana corporation with its principal place of business in Indiana and the Defendants are citizens of California.

9.      This Court has pendant jurisdiction over the state law claims under Title 28 U.S.C. § 1367.

10.      Venue is proper in the Northern District of Indiana pursuant to Title 28 U.S.C. § 1391 and Title 18 U.S.C. § 1965 because the Northern District of Indiana is where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

11.      This Court has personal jurisdiction over the Defendant, Mr. Garelick, as he associated in fact with Ms. Wang in the State of Indiana to commit the claims herein primarily within the State of Indiana, he knowingly accepted the proceeds of property stolen in the State of Indiana from a corporation domiciled in the State of Indiana, and he directed and/or agreed to the commitment of various torts and criminal actions within the State of Indiana.

12.      This Court has personal jurisdiction over the Defendant, MOLM, as it associated in fact with Ms. Wang in the State of Indiana to commit the claims herein primarily within the State of Indiana, it knowingly accepted the proceeds of property stolen in the State of Indiana from a corporation domiciled in the State of Indiana, and it directed and/or agreed to the commitment of various torts and criminal actions within the State of Indiana.

### IV.     PARTIES

13.     Plaintiff 3BTech, Inc. is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business at 3431 William Richardson Drive, South Bend, Indiana.

14.     Defendant, Mr. Garelick, is an attorney who resides in and is a citizen of Irvine, California, and currently represents Ms. Wang in the divorce action. Mr. Garelick is employed by MOLM as a managing partner.

15.     Defendant, MOLM, is a professional limited liability partnership established in Los Angeles, California whose partners are each residents and citizens of California. MOLM employs Mr. Garelick as a managing partner of its Irvine, California office.

### V.     COMMON ALLEGATIONS

16.     On or about June 19, 2020, DC 3B, LLC, an Indiana limited liability company, sold a property in Indiana (the "Vorden Property") and closed escrow.

17.     DC 3B, LLC is an Indiana limited liability company utilized by the Plaintiff to hold real estate.

18.     The escrow funds from the Vorden Property amounted to $1,600,000 and were separately held by DC 3B, LLC for the purchase of another property by the Plaintiff located at 10711 Walker Street, Cypress, California (the "Walker Property").

19.     At all times, the subject $1,600,000 belonged to DC 3B, LLC, but was held solely for the benefit of the Plaintiff.

20.     Escrow for the Walker Property was opened on June 2, 2020 and was intended to close within 30 days after the expiration of all contingencies.

21.     At all times relevant to this action, Ms. Wang was an accounting manager for Plaintiff 3BTech, pursuant to which she simultaneously oversaw DC 3B LLC's projects and accounting department.

22.     As such, Ms. Wang has access to the account holding the $1,600,000 for particular business matters, but not the authority to withdrawal such an amount.

23.     Specifically, as accounting manager, Ms. Wang was tasked by Plaintiff to coordinate payments of costs to close the escrow and remove contingencies for the purchase of the Walker Property.

24.     Under Ms. Wang's direction, those payments were to come directly from the account holding the $1,600,000 from the sale of the Vorden Property.

25.     Ms. Wang, however, never coordinated, arranged or made the payments from the separate account for the closing of escrow on the Walker Property.

26.     Despite specific knowledge of the purpose of the separate account and the subject $1,600,000, Ms. Wang transferred the subject $1,600,000 from the separate account to her family trust ("J&J Trust") account (the "J&J Transfer").

27.     On that same day, July 21, 2020, Ms. Wang transferred $1,580,000 from J&J Trust to her personal bank account at Bank of America (the "Personal Transfer").

28.     Both the J&J Transfer and the Personal Transfer were conducted via interstate wire transmissions.

29.     The Membership of DC 3B, LLC, at the time of these transfers, consisted solely of Jerry Lin and Mr. Zhu; they were the only individuals who could authorize the transfer of DC3B's funds.

30.     Neither Jerry Lin nor Mr. Zhu agreed to, consented to, or authorized the J&J Transfer made by Ms. Wang.

31.     As a result of the withdrawal of the $1,600,000 designated for the closing of escrow on the Walker Property, the purchase of the Walker Property -- valued at $17,000,000 -- for the purchase price of $11,000,000 has been cancelled.

32.     Moreover, the unauthorized withdrawal of this significant capital of the Plaintiff has undermined the entire business structure of Plaintiff, which could soon result in the loss of 60 jobs in Indiana and California.

33.     On July 24, 2020, Plaintiff contacted Ms. Wang through her legal counsel, Mr. Garelick, to demand the return of the funds transferred without authorization.

34.     Mr. Garelick, on behalf of Ms. Wang, responded that the funds needed to remain in his client's control pending resolution of the divorce action.

35.     Further, Mr. Garelick, on behalf of Ms. Wang, threatened to withhold Plaintiff's assets indefinitely unless Plaintiff and Mr. Zhu agreed to certain terms in the divorce action to the detriment of Mr. Zhu's and Plaintiff's self-interests.

36.     The terms Mr. Garelick proposed went against the will of the Plaintiff and Mr. Zhu.

37.     Relatedly, on information and belief, in or about July of 2020, Ms. Wang retained Mr. Garelick with $25,000 derived from proceeds from 3BTech's corporate credit card.

38.     3BTech's principals did not authorize or approve Ms. Wang's use of corporate funds to retain a family law attorney in the State of California.

39.     After retaining Mr. Garelick for personal purposes using 3BTech's funds, Ms. Wang, on information and belief, in or about July of 2020, used a 3BTech corporate credit card to charge $7,500 to hire or pay forensic accountants hired by Ms. Wang's counsel, Mr. Garelick, for services to be rendered in the divorce action.

40.     Each of these corporate credit card transactions occurred via interstate wire transmission, and at the direction of Mr. Garelick and MOLM.

41.     Prior to her use of the corporate credit card for these purposes, Ms. Wang had been entrusted with 3BTech's corporate credit cards exclusively for 3BTech's business purposes and not for personal purchases.

42.     Contrary to these purposes, the corporate credit card transactions were each conducted for Ms. Wang's personal purposes and against the interests of 3BTech.

43.     3BTech's principals did not authorize or approve Ms. Wang's use of corporate funds to retain forensic accountants to represent her in the divorce action.

44.     In or about July of 2020, Ms. Wang also made a wage and salary commission to a family owned joint account in the amount of $30,000 that was not authorized by 3BTech and subsequently transferred that money to her own personal account at the direction of Mr. Garelick and MOLM.

45.     In or about July of 2020, Ms. Wang also seized control of corporate records, corporate checkbooks, and bank fobs belonging to 3BTech without its authorization.

46.     In or about July of 2020, Ms. Wang simultaneously seized control over bank account access for DC 3B, LLC, locking out the company's principals and managers.

47.     Neither DC 3B, LLC nor 3BTech's principals and managers authorized her seizure of bank access and have requested restoration of their access as well as that Ms.

Wang relinquish her own control over the bank accounts, corporate books, corporate records, and back account security key fobs as well as certain corporate assets such as a laptop and a cellphone.

48.    As of the filing of this Verified Complaint, Ms. Wang, through her counsel, has refused to return account access, corporate property, and Plaintiff's funds unless certain terms related to the divorce action are agreed to by Plaintiff and Mr. Zhu.

49.    In addition to targeting 3BTech and DC 3B, LLC, Ms. Wang, at the direction of counsel, used another of 3BTech's affiliates, Hoverzon, LLC, a Nevada limited liability company, to funnel corporate funds to her personal coffers.

50.    Specifically, on or about July 15, 2020, Ms. Wang transferred $200,000 from 3BTech to Hoverzon, LLC, and then transferred $200,000 to her family trusts.

51.    The Membership of Hoverzon, LLC, at the time of these transfers, consisted solely of Peggy Lin and Mr. Zhu.

52.    Peggy Lin and Mr. Zhu were the only individuals who could authorize the transfer of Hoverzon, LLC's funds.

53.    Neither Peggy Lin nor Mr. Zhu agreed to, consented to, or authorized the transfer made by Ms. Wang.

54.    In response to the personalized threats and demands of Ms. Wang and Mr. Garelick, Mr. Zhu has recused himself from all corporate activity for 3BTech, DC 3B, LLC and Hoverzon, LLC, and therefore, interim controlling principals have been appointed.

55.    Specifically, Brett Barbour has been named interim Chief Executive Officer of Plaintiff 3BTech, Jerry Lin has been named Interim General Manager of DC 3B, LLC, and Peggy Lin has been named Interim General Manager of Hoverzon LLC.

56.    These interim principals have sought the return of all embezzled funds, account access, and corporate property from Ms. Wang, but, at the direction of counsel, she has refused, despite the fact that she is unauthorized to possess any of them.

57.    Finally, in addition to rearranging corporate structures to prevent 3BTech, DC 3B, LLC and Hoverzon, LLC from being manipulated by Ms. Wang's counsel to achieve personal goals targeting Mr. Zhu, the three entities have settled their liabilities to one another caused by Ms. Wang's actions as an employee of 3BTech who raided the corporate coffers of multiple related entities.

58.    Specifically, to avoid in-fighting among the related entities who share some overlapping common ownership (though, not all -- each entity has a different combination of membership and shareholders), 3BTech, DC 3B, LLC and Hoverzon, LLC have reached a settlement and assignment of rights agreement whereby DC 3B, LLC and Hoverzon, LLC have assigned all of their rights to pursue claims against  Mr. Garelick and MOLM to 3BTech for the purpose of a singular recovery to be equitably distributed to each of the entities.

## VI.    CAUSES OF ACTION

### Count I – Tortious Conversion (Defendant  Garelick)

59.    Plaintiff hereby restates and incorporates by reference, as if fully set forth herein, the averments of Paragraphs 1 through 58 above.

60.    Despite his knowledge of DC 3B LLC's ownership of the subject $1,600,000, Defendant Garelick has continued to exercise control over DC 3B LLC's money without DC 3B LLC's authorization, consent, or permission.

61.     Defendant Garelick has exercised control over money owned by DC 3B, LLC by transferring those funds to a trust controlled, in part, by Ms. Wang (the J&J Transfer), thereafter transferring most of those funds to Ms. Wang's personal account (the Personal Transfer), and, subsequently, unlawfully withholding the funds from DC 3B LLC's lawful demand of return.

62.     DC 3B, LLC has transferred its right of recovery for these damages to 3BTech as explained above.

63.     Moreover, Defendant Garelick exerted unauthorized control over the property of 3BTech, by way of a $25,000 and a $7,500 credit card charges made from 3BTech's accounts to Mr. Garelick and his hired forensic accountants.

64.     Defendant Garelick exerted unauthorized control over the property of 3BTech, $200,000.

65.     Defendant Garelick's unauthorized actions constitute conversion.

66.     As a direct and proximate result of Defendant Garelick's actions, 3BTech has been damaged in the amounts of $1,600,000, $32,500 and $200,000, for a total sum of $1,832,500.00.

67.     The actions of Defendant Garelick, as set forth throughout this Complaint, are such that Defendant Garelick has acted with malice, fraud, gross negligence, and oppressiveness which was not the result of mistake, effect of law, honest error or judgment, overzealousness, mere negligence, or other human failing, rendering punitive damages appropriate.

## Count II – Tortious Interference (Defendant Garelick)

68.     Plaintiff hereby restates and incorporates by reference, as if fully set forth herein, the averments of Paragraphs 1 through 67 above.

69.     DC 3B, LLC enjoys an existing business relationship with the owner of the Walker Property.

70.     Mr. Garelick was  aware and otherwise has knowledge of DC 3B LLC's business relationship with the owner of the Walker Property.

71.     By his actions, Mr. Garelick has deprived DC 3B, LLC of the capital necessary to complete the purchase of the Walker Property through the payment of costs and extinguishment of contingencies, and, thus, diminished the profits which would otherwise have been gained from DC 3B LLC's purchase of the Walker Property.

72.     Mr. Garelick's engagement in the various unlawful acts (including the criminal violations alleged as part of the violations of the Indiana Crime Victims Act) have intentionally and illegally interfered with DC 3B LLC's business relationship with the owner of the Walker Property.

73.     Mr. Garelick's actions in interfering with DC 3B LLC's business relationship is without justification.

74.     DC 3B, LLC has transferred its right of recovery for these damages to 3BTech as explained above.

75.     As a result of Mr. Garelick's unjustified, tortious, and illegal interference with Plaintiff's business relationships, 3BTech has suffered damages in an amount to be proven at trial.

## Count III–Civil RICO, 18 U.S.C. §§ 1962(c)(All Defendants)

76.    Plaintiff hereby restates and incorporates by reference, as if fully set forth herein, the averments of Paragraphs 1 through 75 above.

77.    Claims under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961 *et seq.*, are brought by Plaintiff.

78.    Plaintiff is a person that has sustained injury to its business and property within the meaning of 18 U.S.C. §1961(3) and §1964(c) and has standing to bring these civil RICO causes of action.

79.    Defendants Garelick and MOLM ("the RICO Defendants") were, at all times relevant hereto, each persons within the meaning of 18 U.S.C. §1961(3).

80.    The RICO Defendants have, while employed by or associated with an enterprise which is engaged in or whose activities affect interstate commerce, knowingly participated in directing the operation and management of that enterprise through a pattern of racketeering activity, as defined by 18 U.S.C. §1961(5), i.e., by engaging in a series of two or more acts of racketeering activity ("predicate acts") within ten years.

81.    The racketeering activity was made possible by the RICO Defendants' regular and repeated use of the facilities and services of the enterprise.

82.    All of the RICO Defendants had the specific intent to engage in the substantive RICO violation.

## The Racketeering Enterprise

83.    At all relevant times, and as described in this Verified Complaint, Mr. Garelick and MOLM were and are associated in fact as an enterprise, within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise").

84.    The purpose of the Enterprise was and is to prosecute the divorce action on behalf of Ms. Wang and to manipulate concessions from Mr. Zhu through untoward leverage imposed on businesses that had nothing to do with the divorce action, primarily, 3BTech.

85.    As described herein, the Enterprise had and continues to have an ascertainable structure and function separate and apart from the pattern of racketeering activity in which the RICO Defendants have engaged.

86.    Specifically, the pattern of racketeering activity includes four separate acts of wire fraud and at least one attempt at extortion, while the enterprise consists of two legal persons -- the RICO Defendants -- corruptly prosecuting the divorce action.

87.    The members of the Enterprise function as a structured and continuous unit, performing roles consistent with this structure.

88.    Each member of the Enterprise plays a role in carrying out the purpose of the Enterprise -- prosecuting the divorce action against Mr. Zhu and manipulating concessions through illegal pressure campaigns -- that is separate from the particularly-identified predicate acts.

89.    The members of the Enterprise performed certain legitimate and lawful activities that are not being challenged in this Verified Complaint, including the filing of the divorce action itself and the legal representation of Ms. Wang in that lawsuit.

90.    However, the embezzlement and conversion of Plaintiff's property was not legitimate, nor was the leveraging of that stolen property to manipulate concessions from Mr. Zhu. *See Handeen v. Lemaire*, 112 F.3d 1339, 1344 (8th Cir. 1997) (while ordinarily

a Chapter 13 bankruptcy estate is a legitimate, lawful pursuit, it may constitute a RICO enterprise where it is manipulated to obtain a fraudulent discharge).

91.     And while "an attorney . . . does not conduct an enterprise's affairs [by providing] run-of-the-mill . . . professional services", an attorney may still be liable under § 1962 "when [crossing] the line between traditional rendition of legal services and active participation in directing the enterprise." *Id.* at 1348-49.

92.     Mr. Garelick and MOLM crossed this line through their active participation in the Enterprise, namely through their actions in (1) agreeing to, and directing, Ms. Wang's theft of 3BTech's property to advance the interests of the Enterprise, (2) accepting the proceeds of that theft as payment for their participation in the Enterprise, and (3) coordinating the effort to leverage that stolen property for concessions in the divorce action.

93.     Aside from legitimate activities carried out by the members of the Enterprise, its members used the Enterprise's structure to carry out the fraudulent and unlawful activities alleged in this Verified Complaint including, but not limited to, several distinct acts of embezzlement as to 3BTech's property and the extortionate act of leveraging that property for gains in the divorce action.

## The Culpable Defendants

94.     To satisfy the "culpable defendant" requirement, the plaintiff must establish by a preponderance of the evidence that each individual defendant qualifies as a culpable "person" who willfully or with actual knowledge violated or conspired to violate RICO. *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 180-81 (2nd Cir. 2004).

95.     As set forth above, attorneys and other professionals who go beyond the ordinary provision of professional services and participate in the operation or management of a RICO enterprise may be held liable for violating § 1962(c) and/or § 1962(d).

96.     Mr. Garelick is a culpable defendant who willfully violated and conspired to violate RICO through: (1) agreeing to, and directing, Ms. Wang's theft of 3BTech's property to advance the interests of the Enterprise; (2) accepting the proceeds of that theft as payment for their participation in the Enterprise; and (3) coordinating the effort to leverage that stolen property for concessions in the divorce action.

97.     MOLM is a culpable defendant that willfully violated and conspired to violate RICO under the doctrine of *respondeat superior*, whereby, as Mr. Garelick's employer, it was benefited by its employee's violations of section 1962(c), *see Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1281 (7th Cir.1989), in the form of its acceptance of the proceeds of Ms. Wang's theft and the extortionate effort to leverage the theft in the divorce action.

## The Racketeering Activity

98.     The RICO Defendants violated 18 U.S.C. § 1962(c) by conducting their affairs through a pattern of racketeering activity as defined in 18 U.S.C. § 1961(1)(B), consisting of acts of wire fraud, as stated below, in violation of 18 U.S.C. § 1343, as well as acts of extortion indictable under Indiana law.

99.     First, for purposes of the mail and wire fraud statutes, "[t]he concept of 'fraud' includes the act of embezzlement, which is 'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'" *Carpenter v. United*

*States*, 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (quoting *Grin v. Shine*, 187 U.S. 181, 189, 23 S.Ct. 98, 47 L.Ed. 130 (1902)).

100.   As set forth above, the RICO Defendants, by and through Ms. Wang, engaged in at least four distinct acts of embezzlement via interstate wires:

a.   Ms. Wang exercised unauthorized control over $1,600,000 from the sale of Vorden Property by Plaintiff and she subsequently appropriated those funds, at the direction of the RICO Defendants, to her own use by transferring them to J&J Trust and then her personal account through interstate bank wire transfers.

b.   Ms. Wang exercised unauthorized control over $200,000 by Plaintiff, which she appropriated to her own use, at the direction of the RICO Defendants, through the transfer of those funds to her personal bank account.

c.   Ms. Wang exercised unauthorized control over Plaintiff's lines of credit from a bank, which she appropriated to her own use, at the direction of the RICO Defendants, by paying $25,000 to retain the RICO Defendants to prosecute the divorce action. This credit card payment was made using interstate wire transmissions.

d.   Ms. Wang exercised unauthorized control over Plaintiff's lines of credit from a bank, which she appropriated to her own use, at the direction of the RICO Defendants by paying $7,500 to Mr. Garelick for the hiring of forensic accountants to prosecute the divorce action. This credit card payment was made using interstate wire transmissions.

101.    Second, the RICO statute explicitly includes violations of state extortion law among its predicate offenses. *See* 18 U.S.C. § 1961(1)(A). Accordingly, civil claims under RICO can be based either on violations of the Hobbs Act or on "any act or threat involving ... extortion ... which is chargeable under state law[.]" 18 U.S.C. § 1961(1).

102.    Under Ind. Code § 35-45-2-1, Indiana's statute covering extortion, "[a] person who communicates a threat with the intent . . . that another person engage in conduct against the other person's will . . . commits intimidation[.]"

103.    As set forth in paragraphs 35 through 38 above, which are hereby restated and incorporated by reference, Ms. Wang, Mr. Garelick, and MOLM responded to Plaintiff's demand for the return of the subject $1,600,000 by threatening to continue illegally withholding 3BTech's property unless 3BTech's principal, Mr. Zhu, made concessions in the divorce action against his will.

## The Pattern of Racketeering Activity

104.    The Enterprise engaged in a scheme or artifice to defraud 3BTech by using wire fraud and extortion to advance their litigation against Mr. Zhu.

105.    The Enterprise continues to benefit from the scheme to defraud by using 3BTech's property to fund their litigation and to exert leverage over Mr. Zhu in order to force a settlement of the divorce action.

106.    The RICO Defendants' pattern of activity is continuing and related to their past predicate acts of fraud and extortion, and the Enterprise will continue in the future to acquire and/or attempt to acquire illegal gains in violation of 18 U.S.C. § 1962(c).

107.   Specifically, in the relatively brief time that this Enterprise has existed (since July of 2020), it has committed at least four acts of wire fraud and one act of extortion in pursuit of its purpose.

108.   Undoubtedly, these offenses are part of the Enterprise's regular manner of conducting what would normally be a legitimate business -- the prosecution of the divorce action.

109.   And while litigation would normally have a natural endpoint closing the loop on continuity, the threat of this Enterprise continues due to its dual purpose of manipulating concessions from Mr. Zhu through untoward leverage on his business interests.

110.   As set forth above, the RICO Defendants have already used their possession of Plaintiff's property to advance their interests one time in the pursuit of manipulating concessions from Mr. Zhu; their continued unlawful holding of Plaintiff's property positions them to continue exerting untoward and unlawful leverage upon Mr. Zhu in perpetuity.

**Defendants' Conduct and Participation in Racketeering Activity**

111.   The RICO Defendants operated, conducted and participated in the operation of the Enterprise.

112.   The predicate acts of racketeering activity described above are all related in that the individual RICO Defendants, acting through the Enterprise, have conducted these criminal acts of fraud and extortion to obtain benefits in the divorce action for the Enterprise, which it would not have obtained by lawful means.

113.   The predicate acts are continuous and will continue in the future.

114.    The individual RICO Defendants comprising the Enterprise employ the predicate acts of racketeering activity as a regular method of conducting business, using fraud whenever the opportunity presents itself on whomever it encounters.

115.    Each RICO Defendant was a necessary and integral part of the scheme to defraud and extort 3BTech and each played a role in the operation and control of the scheme defrauding and extorting 3BTech.

## Count IV–Civil RICO, 18 U.S.C. §§ 1962(d)(All Defendants)

116.    Plaintiff hereby restates and incorporates by reference, as if fully set forth herein, the averments of Paragraphs 1 through 115 above.

117.    Under section 1962(d), "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

118.    To prove a conspiracy claim under section 1962(d), a RICO plaintiff must prove by a preponderance of the evidence that each defendant knowingly agreed to facilitate or participate in an endeavor or scheme that, if completed, would constitute a violation of the RICO statute. *Salinas v. United States*, 522 U.S. 52, 65 (1997).

119.    Moreover, a RICO defendant may conspire to violate section 1962(c) if it agreed "to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity," and "it is only necessary that the defendant agree to the commission of [at least] two predicate acts on behalf of the conspiracy." *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986); *see also United States v. Quintanilla*, 2 F.3d 1469, 1484 (7th Cir. 1993); *United States v. Stern*, 858 F.2d 1241, 1246–47 (7th Cir. 1988).

120.    A defendant need not have agreed to actually commit the predicate acts itself or even to participate in the commission of those acts so long as it agreed that the acts would be committed on behalf of the conspiracy. *Quintanilla*, 2 F.3d at 1484; *United States v. Campione*, 942 F.2d 429, 437 (7th Cir. 1991); *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir.), *cert. denied*, 502 U.S. 810, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

121.    Thus, here, the facts point toward the Defendants' participation in a conspiracy to violate Section 1962(c), even if Mr. Garelick and MOLM did not themselves personally partake in the predicate fraudulent activities.

122.    There are sufficient facts to find that Mr. Garelick and MOLM agreed to the commission of the fraud through its use of the fraudulently-obtained funds for leverage in the suit and its advice to not return the funds when demanded by the Plaintiff.

123.    By agreeing to and perpetuating the fraud, Mr. Garelick and MOLM have conspired to violate section 1962(c).

124.    The facts outlined above sufficiently demonstrate that each defendant purposefully and fraudulently conspired and through coordinated, methodic and systematic actions successfully co-opted and stole from Plaintiff through their joint efforts.

## PRAYER FOR RELIEF

WHEREFORE, 3BTech, Inc. requests that this Court:

(A)    On Count I, enter judgment in favor of Plaintiff and against Defendant Marc Garelick in the amount of $5,097,500 (three times the actual damages), for a constructive trust on all funds in the United States improperly diverted from Plaintiff, and for attorney fees incurred herein;

(B)     On Count II, enter a judgment in favor of Plaintiff and against the RICO Defendants, jointly and severally, in an amount which will compensate 3BTech for its damages, treble damages pursuant to 18 U.S.C. § 1964(c), for the costs of this action, for prejudgment and post-judgment interest, for reasonably attorney's fees pursuant to 18 U.S.C. § 1964(c), and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c);

(C)     On Counts III and IV, enter a judgment in favor of Plaintiff and against the RICO Defendants, jointly and severally, in an amount which will compensate 3BTech for its damages, treble damages pursuant to 18 U.S.C. § 1964(c), for the costs of this action, for prejudgment and post-judgment interest, for reasonably attorney's fees pursuant to 18 U.S.C. § 1964(c), and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c); and

(D)     Award Plaintiffs such additional relief as the court deems reasonable and just, including interest and its costs of this action.

Respectfully submitted,

BURT, BLEE, DIXON, SUTTON & BLOOM, LLP

s/ Jared P. Baker
Jeremy J. Grogg, #24206-02
Jared P. Baker, #31610-02
Katherine R. Gould, #27125-49
200 East Main Street, Suite 1000
Fort Wayne, IN  46802
Telephone: (260) 426-1300
Facsimile: (260) 422-2722

## VERIFICATIONS

I, Brett Barbour, am the Interim Chief Executive Officer for 3BTech, Inc., Plaintiff in the above-entitled cause of action. I am authorized to act on behalf of 3BTech, Inc.  I have read and am familiar with the contents of the Verified Complaint in this matter. Based on my knowledge, the factual allegations in the Verified Complaint are true.

I declare under penalty of perjury under the laws of United States, that the foregoing is true and correct.


By: _____
Brett Barbour
Interim Chief Executive Officer for 3BTech, Inc.