UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

3BTECH INC, DC 3B, LLC, HOVERZON,
LLC,

     Plaintiffs,

     v.                            Case No. 3:21-CV-34 JD

MARC HARRIS GARELICK,

     Defendant.

## OPINION AND ORDER

Now before the Court is a motion to dismiss Plaintiffs' Amended Complaint. (DE 30.) Plaintiffs filed a complaint bringing two federal claims under RICO, as well as two claims under state tort law. (DE 29.) Defendant, Marc Harris Garelick, argues that the complaint must be dismissed for lack of subject matter jurisdiction and because it fails to state a claim upon which relief can be granted. The Court now dismisses Plaintiffs' RICO claims, finding that they did not adequately plead a pattern of racketeering activity. Because federal question jurisdiction was the only ground alleged by Plaintiffs to establish subject matter jurisdiction, the Court also dismisses Plaintiffs' remaining state law claims.

### A.    Factual Background

The facts of this case stem from a contentious, ongoing California divorce proceeding between one of Mr. Garelick's clients, Jie Wang, and an owner of 3BTech Inc., Mr. Jianqing Zhu. (DE 29 ¶¶ 1–4) Mr. Garelick represents Ms. Wang in this divorce proceeding. (*Id.* ¶ 1.) In order to gain leverage and generate excessive legal fees, Plaintiffs allege that Mr. Garelick directed Ms. Wang to engage in multiple acts of fraud by transferring money away from 3BTech

and its affiliates, DC 3B, LLC, and Hoverzon, LLC. (*Id*. ¶¶ 3, 87.) Over 1.8 Million dollars is alleged to have been misappropriated from 3BTech, DC 3B, and Hoverzon over the course of multiple fraudulent transactions in July of 2020, all at the direction of Mr. Garelick. (DE 29 ¶¶ 1, 87.)

According to Plaintiffs, Ms. Wang served as the accounting manager for 3BTech, DC 3B, and Hoverzon and used this position to transfer Plaintiffs' property to her own accounts. (*Id.* ¶ 19.) The transactions at issue appear to have started around July 15, 2020. (*Id.* ¶ 43.) On that day, Plaintiffs allege that Mr. Garelick directed Ms. Wang to funnel money away from 3BTech and one of their affiliates, Hoverzon. (*Id.* ¶ 42.) The Amended Complaint asserts that Ms. Wang transferred $200,000 from 3BTech to Hoverzon accounts located in Indiana without authorization to do so. (*Id.* ¶ 43.) She proceeded to transfer this $200,000 from the Hoverzon accounts to her family trust account located in California. (*Id.* ¶ 43.)

Plaintiffs further allege that Ms. Wang continued to abuse her fiduciary position as accounting manager, engaging in multiple other fraudulent transactions in July of 2020. The largest of these transactions occurred on July 21, 2020. (*Id.* ¶ 26.) On that day, Plaintiffs allege that Ms. Wang fraudulently transferred $1,600,000 from another affiliate of 3BTech, DC 3B, to her personal bank accounts. (*Id*. ¶ 25.)

As this is the most significant fraudulent transaction alleged, the Court recounts the circumstances surrounding it in greater detail. DC 3B had previously sold a property (the "Vorden Property") for $1,600,000. (*Id*. ¶¶ 14, 16.) This money was then held by DC 3B for the purchase of the "Walker Property" by 3BTech. (*Id*. ¶ 16.) DC 3B existed in order to help 3BTech with this kind of real estate transaction. (*Id*. ¶ 15.) As the accounting manager, Ms. Wang was responsible for coordinating the payments to close escrow on the Walker Property. (*Id.* ¶ 19.)

However, instead of paying this amount to close on the Walker Property, Plaintiffs allege that Ms. Wang transferred the $1,600,000 from the DC 3B bank account in Indiana to her family trust account located in California through an electronic transfer. (*Id.* ¶¶ 25–26.) Then, Ms. Wang transferred $1,580,000 from the J&J Trust account to her personal bank account in California. (*Id.* ¶ 26.) Plaintiffs allege that all this activity occurred without any authorization from Mr. Zhu, who owned 3BTech, and that Ms. Wang's withdrawal of the $1,600,000 caused the purchase of the Walker Property to be cancelled. (*Id.* ¶ 28.)

A third unauthorized transfer of funds is alleged to have occurred "in or about July of 2020." (*Id.* ¶ 37.) Ms. Wang is alleged to have "transferred a wage and salary commission in the amount of $30,000 to a family-owned joint account, and subsequently electronically transferred that money to her own personal account at the direction of Garelick." (*Id.*) Plaintiffs allege that each of the previous three unauthorized transfers of funds constituted wire fraud in violation of 18 U.S.C. §§ 1343 and 2314. (*Id.* ¶ 87.)

Plaintiffs also allege that Ms. Wang used 3BTech's corporate credit card without authorization on two occasions, in violation of 18 U.S.C. § 1029(a)(2). (*Id.*) Each use is alleged to have occurred sometime in July of 2020, but Plaintiffs do not provide specific dates. (*Id.* ¶¶ 32–34.) The first unauthorized use of 3BTech's corporate credit card occurred when Ms. Wang retained Mr. Garelick with a $25,000 payment. (*Id.*) The second unauthorized use occurred when Ms. Wang paid a forensic accountant $7,500 with a 3BTech corporate credit card. Plaintiffs allege that the corporate credit card originated out of Indiana, while both purchases were processed in California. (*Id.*)

In addition to these transactions, Plaintiffs allege that Ms. Wang improperly seized control of 3BTech bank accounts, corporate books, corporate records, bank fobs, and also locked

out the company's principals and managers from the accounts. (*Id.* ¶¶ 38–39.) However, like the credit card transactions, Plaintiffs assert generally that this conduct occurred sometime in July of 2020. (*Id.*)

The Amended Complaint alleges that Mr. Garelick directed Ms. Wang to perform these acts in "an effort to increase leverage [in her divorce proceeding] and generate excessive legal fees." (*Id.* ¶¶ 3, 24, 88). According to Plaintiffs, on July 24, 2020, 3BTech contacted Mr. Garelick about these transfers and demanded its funds be returned. (*Id.* ¶ 29–30.) However, Mr. Garelick refused to return the misappropriated funds and also "threatened to withhold Plaintiffs' assets indefinitely unless Mr. Zhu agreed to certain unfavorable terms in the divorce action." (*Id.* ¶ 31.) Plaintiffs claim that this act constituted federal extortion, in violation of 18 U.S.C. § 1951(a). (*Id.* ¶ 87.)

On January 14, 2021, 3BTech filed a complaint against Mr. Garelick and his law firm Meyer, Olson, Lowry & Meyers, LLP ("MOLM"). (DE 1.) An amended complaint was then filed by 3BTech as well as two subsidiaries, DC 3B and Hoverzon. (DE 29.) The Amended Complaint names Mr. Garelick as the sole defendant. (*Id.*) It asserts four claims of relief:

> **Count I** – Tortious Conversion (DE 29 ¶¶ 53–61);
>
> **Count II** – Tortious Interference (*Id.* ¶¶ 62–68);
>
> **Count III** – Civil RICO, 18 U.S.C. § 1962(c) (*Id.* ¶¶ 69–93);
>
> **Count IV** –  Civil RICO, 18 U.S.C. § 1962(d) (*Id.* ¶¶ 94–101).

Mr. Garelick then moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim for relief. (DE 30.)

### B.     Standard of Review

Rule 12(b)(1) authorizes dismissal of claims over which the Court lacks subject matter jurisdiction. In analyzing a motion to dismiss, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citations omitted). The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it. *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

A special rule applies for pleading fraud: under Rule 9(b), "a party must state *with particularity* the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b) (emphasis added). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud . . . ." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) applies to any claim "that is premised upon a course of fraudulent conduct." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Therefore, even claims that are not definitionally fraudulent torts may "sound in fraud," as long as they are premised upon a course of fraudulent conduct. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Although claims of interference with economic advantage, interference with fiduciary relationship, and civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations.").

Plaintiffs' complaint alleges that Mr. "Garelick's scheme employed multiple distinct acts of illegally directing the transfer of assets, *by fraud* from plaintiffs . . . ."  (DE 29 ¶ 2.)  The Amended Complaint is replete with references to Mr. Garelick's alleged fraud. Additionally, Plaintiffs' RICO claims rely on five predicate acts, out of six predicate acts, which are crimes of fraud.[1] (*Id.* ¶ 87.) Therefore, the Court believes that, at least for the RICO claims considered below, Rule 9(b) applies.

---

[1] Plaintiffs allege that Mr. Garelick committed three predicate acts in violation of 18 U.S.C. § 1343, which prohibits wire fraud. (DE 29 ¶ 86–87.) Plaintiffs also allege Mr. Garelick committed two predicate acts in violation of 18 U.S.C. § 1029(a)(2), which punishes those who "knowingly and with intent to *defraud* traffic[] in or use[] one or more unauthorized access devices during any one year-period, and by such conduct obtain[] anything of value aggregating $1,000 or more during that period." (*Id.*) The sixth predicate act Plaintiffs allege Mr. Garelick committed was an act of extortion in violation of 18 U.S.C. § 1951(a). (*Id.*)

## C.    Discussion

Mr. Garelick argues that the case should be dismissed for three reasons. Two of his arguments rely on doctrines that provide narrow carveouts to federal jurisdiction. First, he argues that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. Second, he argues that the Court lacks jurisdiction due to the domestic-relations exception. As the Court explains below, neither of these doctrines applies to the instant case. However, his third argument has more merit. Mr. Garelick argues that Plaintiffs' RICO claims should be dismissed for failure to state a claim upon which relief can be granted. While neither of the jurisdictional exceptions applies to the instant case, the Court agrees that Plaintiffs' RICO claims must be dismissed.

### *(1)    Rooker-Feldman Doctrine*

Mr. Garelick first argues that the *Rooker-Feldman* doctrine precludes the Court from deciding the case. (DE 31 at 5–8.) "The *Rooker-Feldman* doctrine precludes federal courts from deciding cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 613 (7th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies in a limited set of circumstances. *Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2021) ("Only a narrow segment of cases fall outside the jurisdiction of the lower federal courts under *Rooker-Feldman*."). In *Andrade v. City of Hammond*, the Seventh Circuit described the two-step analysis used to determine if the *Rooker-Feldman* doctrine bars jurisdiction:

> First, we consider whether a plaintiff's federal claims are "independent" or, instead, whether they "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th

Cir. 2019). If they are "independent" claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them. But if they "directly" challenge or are "inextricably intertwined" with a state-court judgment, then we move on to step two.

At step two, we determine "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction.

*Andrade*, 9 F.4th at 950.

Mr. Garelick argues the federal claims are inextricably intertwined with state law claims by making an analogy. He directs the Court to a case from our sister court in the Northern District of Illinois, *Davit v. Davit*, which he claims is "perfectly on point for the current case." (DE 31 at 7.) He then asserts, in a conclusory manner, that "[o]ur courts do not tolerate angry husbands going through messy divorces to turn every gripe about property resulting from divorce into a literal federal case." (*Id.* at 8.) Unfortunately, Mr. Garelick's analogy to *Davit* is not remotely "on point," since the case is distinguishable.

In *Davit*, the plaintiff alleged "various decisions by the Circuit Court of DuPage County were part of a RICO conspiracy against him." *Davit v. Davit*, 366 F. Supp. 2d 641, 651 (N.D. Ill. 2004). The Court in *Davit* held that "Davit's RICO claims *that stem from state court rulings* . . . are barred under the *Rooker-Feldman* doctrine, in that the alleged injuries for which Davit seeks relief resulted from and are inextricably intertwined with the state court decisions that he views as unfavorable to him." *Id.* (emphasis added). In essence, *Davit's* claims were barred because his claims required the Court to review a state court decision. *See Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urb. Dev.*, 383 F.3d 552, 556 (7th Cir. 2004) ("[T]he crucial point [of the inextricably intertwined inquiry] is whether the district court is in essence being called upon to

8

review the state court decision."). In this case, however, the injuries claimed by Plaintiffs do not derive from a state court judgment, but rather derive from alleged fraudulent transactions.

The *Rooker-Feldman* doctrine does not bar the case from being heard for a second reason: when the case was filed, the divorce proceeding was still ongoing. (DE 31 at 12; DE 33 at 10.) *Rooker-Feldman* "divests district courts of jurisdiction only in cases where 'the losing party in state court filed suit in federal court *after* the state proceedings ended.'" *Parker v. Lyons*, 757 F.3d 701, 705 (7th Cir. 2014) (quoting *Exxon Mobil Corp.*, 544 U.S. at 291); *see also J.B. v. Woodard*, 997 F.3d 714, 723 (7th Cir. 2021) (citing *Parker*, 757 F.3d at 705–06) ("Because [Plaintiff] filed his federal lawsuit while the domestic relations court's proceedings over parenting time remained ongoing, he is not a state-court loser.") Plaintiffs filed this lawsuit while the divorce proceeding was ongoing. Therefore, they are not state-court losers and *Rooker-Feldman* does not bar the Court from exercising its jurisdiction.

### (2)    *Domestic-Relations Exception*

Mr. Garelick also argues that the domestic-relations exception bars the Court from deciding this case. (DE 31 at 11–13.) However, the mere fact this dispute relates to an ongoing divorce proceeding is not sufficient to trigger the domestic-relations exception. The domestic-relations exception only applies to a narrow range of cases that implicate "the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). The exception is narrowly applied because, while state courts may have a "special proficiency" with "handling issues that arise in the granting of [divorce, alimony, and child custody decrees]," *id*. at 704, "federal courts [are] equally equipped to deal with complaints alleging the commission of torts." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006).

Mr. Garelick asserts generally that "property disputes stemming from divorces fit the exception . . . no matter how the claims are phrased or plead." (DE 31 at 12.) This description of the law is overbroad and unsupported. Rather, the exception focuses primarily on "distinctive forms of relief," such as granting a divorce, annulment, child custody, decree of alimony or child support. *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). Additionally, certain "ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding" are also barred. *Id.*; *see also Sheetz v. Norwood*, 608 Fed. Appx. 401, 404 (7th Cir. 2015) (noting that the domestic-relations exception applies "when the issue raised by the litigant in federal court is ancillary to the domestic-relations proceedings in state court . . . ."). However, a case does not fall within the exception solely because a plaintiff's "factual allegations touch on the subject of marriage." *Arnold v. Villarreal*, 853 F.3d 384, 387 n.2 (7th Cir. 2017).

The Plaintiffs have brought two RICO claims and two tort claims against Mr. Garelick for allegedly conspiring with his client, Ms. Wang, to misappropriate Plaintiffs' assets. It is true that Ms. Wang is undergoing a divorce proceeding with Mr. Zhu, who is an owner of the companies bringing this suit. However, where the status of a family law proceeding "has no bearing on the underlying torts alleged," it does not fall within the domestic-relations exception. *Ankenbrandt*, 504 U.S. at 706. The claims being brought do not seek a form of relief distinct to family law, nor are they claims that would be litigated as a tail to the original domestic-relations proceedings. Rather, the tort claims and RICO claims are the exact type of claims which a federal court is well equipped to deal with.

Accordingly, the Court finds that this case does not fall within the domestic-relations exception.

### (3) RICO claim under 18 U.S.C § 1962(c)

Mr. Garelick next argues that Plaintiffs' RICO claim under 18 U.S.C. § 1962(c) fails to state a claim upon which relief can be granted. (DE 31 at 9–11.) RICO "provides a private right of action for treble damages to 'any person injured in his business or property by reason of a violation of the Act's criminal prohibitions.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008) (quoting 18 U.S.C. § 1964(c)). The allure of these treble damages has incentivized plaintiffs to turn "garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). However, RICO does not cover all claims of wrongdoing. It is more limited, focused specifically on "eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (citing *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001)).

To state a RICO claim under 18 U.S.C § 1962(c), a plaintiff must allege a cognizable injury to its business or property resulting from the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). In his motion to dismiss, Mr. Garelick argues that none of these four elements are plausible based on the allegations in the Amended Complaint. (DE 31 at 9–11.) Therefore, the Court will consider each element required to bring a claim under § 1962(c).

### (a) Conduct of an enterprise

Mr. Garelick argues that Plaintiffs did not properly allege that element of conduct or the element of an enterprise. (DE 31 at 9–10.) In order to satisfy the conduct element, one "must have some part in directing" the affairs of an enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). In other words, one must "operate" or "manage" an enterprise. *Id.* This does not

require the individual to be a part of upper management, since an enterprise may be "'operated' or 'managed' by others 'associated with' the enterprise who exert control over it. . . . ." *Id.* at 184.

The only legal authority Mr. Garelick relies on to argue the conduct and enterprise element have not been met is *Davit v. Davit*, 366 F. Supp. 2d 641 (N.D. Ill. 2004). However, despite Mr. Garelick's repeated citations to *Davit*, it is again easily distinguishable from the present case. In *Davit*, a pro se Plaintiff argued that the enterprise was the Circuit Court of Dupage. *Id.* at 654. The defendants were his ex-wife, the attorney who represented his wife, his attorney, the Village of Lile, and two Judges who presided over his divorce. *Id.* at 644. The Northern District of Illinois determined that even if the two Judge defendants were found to "participate in the operation or management of the Dupage Circuit Court," the other defendants did not participate in the operation or management because all they did was appear in Court. *Id.* at 654–55. Mr. Garelick asserts in his motion to dismiss that the "same issue occurs here." (DE 31 at 10.) However, the Court believes that, unlike *Davit*, the Plaintiffs have adequately alleged that Mr. Garelick manages or operates an enterprise.

First, the Court believes that a RICO enterprise has been adequately alleged. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise "must be more than a group of people who get together to commit a 'pattern of racketeering activity.'" *United States v. Neapolitan*, 791 F.2d 489, 499–500 (7th Cir. 1986). It "can be formal or informal . . . but the enterprise must have some continuity and some differentiation of the roles within it." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (citing *Burdette v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992)). Here, the alleged

enterprise was Mr. Garelick's law firm, MOLM, which was a limited liability partnership existing formally separate from Mr. Garelick. This formal organization, existing separate from Mr. Garelick, meets the definition of an enterprise under § 1961(4). *Cf. Cedric Kushner Promotions Ltd. v. Don King*, 533 U.S. 158, 163–64 (2001) ("The Corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.")

Additionally, the Court believes that Plaintiffs sufficiently alleged that Mr. Garelick had a part in operating or managing MOLM. Unlike *Davit*, where the Court found that certain defendants had not operated or managed an enterprise because they had no connection with the enterprise except for appearing before the Court of Dupage County, Mr. Garelick is a managing partner at MOLM. The Complaint specifically alleges that Mr. Garelick, while managing partner, directed Ms. Wang to misappropriate property to advance the interests of MOLM and accepted proceeds as payments as partner at MOLM. (DE 29 ¶¶ 4, 13.) Because the Complaint alleges that Mr. Garelick participated in management of the enterprise through his position of managing partner, the Court finds that Plaintiffs properly alleged control of an enterprise.

*(b) Predicate acts*

Mr. Garelick argues that Plaintiffs' § 1962(c) claim must be dismissed for another reason: failure to allege at least two predicate acts. (DE 31 at 10.) A pattern of racketeering activity requires two or more predicate acts of racketeering. 18 U.S.C. § 1961(5). Racketeering activity includes a long list of crimes which are defined in 18 U.S.C. 1961(1), including wire fraud, fraud in connection with access devices, and interference with commerce by threats or violence. As discussed above, Plaintiffs' claims against Mr. Garelick sound in fraud, and therefore are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Accordingly,

Plaintiffs had to, "at a minimum, describe [at least] two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

Mr. Garelick argues that him "and his firm, performing their normal and routine business of divorce litigation, in absolutely no manner can be considered to be any kind of illegal predicate act to constitute racketeering." (DE 31 at 10.) Additionally, Mr. Garelick claims that "all that is alleged is that [he] was retained as an attorney to act as counsel for someone getting divorced, and apparently advised them to protect disputed assets." (*Id.*)

If the Plaintiffs' complaint had been so sparse, then Mr. Garelick would be correct. However, the Court disagrees with Mr. Garelick's descriptions of the allegations.

The Court believes that Plaintiffs have adequately alleged, at least two, predicate acts of racketeering. "To convict a person [of wire fraud] under 18 U.S.C. § 1343, the government must prove that he "(1) was involved in a scheme to defraud; (2) had an intent to defraud; and (3) used the wires in furtherance of that scheme." *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016). Plaintiffs alleged that one instance of wire fraud occurred on July 15, 2020. (DE 29 ¶ 43.) On that date, Plaintiffs allege that Mr. Garelick directed Ms. Wang to funnel money away from 3BTech and Hoverzon. (*Id.* ¶ 42.) The Complaint asserts that Ms. Wang transferred $200,000 from 3BTech to Hoverzon accounts located in Indiana without authorization to do so. (Id. ¶ 43.) Then, Plaintiffs allege, she proceeded to transfer this $200,000 to her family trust account located in California. (Id. ¶ 43.)

A second transaction allegedly occurred on July 21, 2020. On that day, Plaintiffs allege that Ms. Wang fraudulently transferred $1,600,000 from Plaintiff DC 3B to her personal bank accounts. (*Id.* ¶ 24.) (*Id.* ¶ 15.) Plaintiffs allege that Ms. Wang, at the direction of Mr. Garelick, transferred the $1,600,000 from the DC 3B bank account in Indiana to her family trust account located in California through an electronic transfer. (*Id.* ¶ 25–26.) Then, Ms. Wang transferred $1,580,000 from the J&J Trust account to her personal bank account in California. (*Id.* ¶ 26.) Plaintiffs allege that all this activity occurred without any authorization from Mr. Zhu, who owned 3BTech, and that Ms. Wang's withdrawal of the $1,600,000 caused the purchase of the Walker Property to be cancelled. (*Id.* ¶ 28.)

The Plaintiffs further alleged that Mr. Garelick directed Ms. Wang to perform these transfers in order to "use as leverage in divorce proceedings" (*Id.* ¶ 3) and then "knowingly accepted the proceeds of [this] misappropriated property." (*Id.* ¶ 4.) They then specifically alleged that Mr. Garelick "threatened to withhold Plaintiffs' assets indefinitely unless Mr. Zhu agreed to certain unfavorable terms in the divorce action." (*Id.* ¶ 31.)

The Court believes these allegations meet the heightened pleading standard under Rule 9(b). They allege the dates of the transfers, the amounts of the transfers, the flow of the transfers interstate, that Mr. Garelick knowingly accepted misappropriated property, and how Mr. Garelick threatened to not give said property back unless certain favorable terms were agreed to by Mr. Zhu. While the scienter of Mr. Garelick is often alleged in general terms, Rule 9(b) allows "malice, intent, knowledge, and other conditions of a person's mind [to be] alleged generally."

The Court emphasizes that just because it finds these allegations pass muster under Rule 9(b), it does not mean they are true. Mr. Garelick, at times in his motion to dismiss, asserts that

the allegations made by Plaintiffs are "contrary to the facts . . . ." (DE 31 at 10.) The Court agrees that Mr. Garelick may not have directed Ms. Wang to perform any of those acts. But, determining whether or not factual allegations are actually true is not the Court's role at the motion to dismiss stage. Rather, at this procedural juncture, the Court must accept Plaintiffs' factual allegations as true.

In order to bring their RICO claim, Plaintiffs were required to plausibly allege at least two predicate acts of racketeering with particularity. The Court believes that they have met this burden. However, the Court agrees with Mr. Garelick that Plaintiffs have not adequately pleaded a pattern of racketeering activity.

### (c)  Pattern of racketeering activity

A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). The indictable predicate acts are listed under 18 U.S.C. § 1961(1)(B). "To plead a pattern of racketeering activity, 'a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity.'" *Menzies v. Seyfarth Shaw* LLP, 943 F.3d 328, 337 (7th Cir. 2019); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).

Demonstrating the relatedness of the predicate acts is often non-controversial. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc*, 20 F. 3d 771 (7th Cir. 1994) ("[A]s with the vast majority of cases dealing with the RICO pattern requirement, the case before us does not turn on the relatedness of the alleged predicate acts."). A relationship between the predicate acts is established if the criminal acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. Here, the predicate acts of racketeering share a

common purpose, common participants, and common victims. Mr. Garelick and Ms. Wang were the participants, who shared the common purpose of gaining leverage in her divorce proceeding with Mr. Zhu, by taking property from Mr. Zhu's companies through a variety of fraudulent transfers. Therefore, the Court believes that relatedness has been adequately pled.

The more difficult inquiry is whether there is continuity. The big picture question for continuity is whether "the challenged conduct occurred and went on long enough and with enough of a relationship with itself to constitute a pattern." *Menzies*, 943 F.3d at 337. Alleging "isolated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet" the continuity element. *Gamboa v. Velez*, 457 F.3d 703, 706 (7th Cir. 2006).

 "Continuity can be a closed- or open-ended concept." *Deguelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). The closed-ended inquiry "asks whether there were enough predicate acts over a finite time to support a conclusion that the criminal behavior would continue." *Menzies*, 943 F.3d at 337. The Court examines "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Vicom, Inc.*, 20 F.3d at 780 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir 1986)). These factors are often referred to as the *Morgan* factors. *Id.* at 781 ("[W]e still must examine Vicom's amended complaint under the rest of the *Morgan* factors.*"). The *Morgan* factors are to be applied "with an eye toward achieving a 'natural and commonsense' result, recognizing that 'Congress was concerned in RICO with long-term criminal conduct.'" *Id.* at 708 (quoting *United States Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1267 (7th Cir. 1990)).

Out of all the *Morgan* factors, the duration of time the predicate acts occurred over is weighed the most heavily. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir.

1992) (writing that duration "is perhaps the closest thing we have to a bright-line continuity test"); *see also Vicom, Inc.*, 20 F.3d at 781 ("[D]uration is the single most important aspect of the closed-ended continuity analysis . . . ."). Predicate acts occurring over less than eight or nine months will rarely be enough to demonstrate closed-ended continuity. *See Vicom, Inc.*, 20 F.3d at 780 ("[A] time frame of less than nine months likely does not satisfy the duration requirement."); *see also Empress Casino Joliet v. Balmoral Racing Club*, 831 F.3d 815, 828 (7th Cir. 2016) (finding that "acts [which occurred] over at most eight months" did not show closed-end continuity).

The Amended Complaint alleges six different predicate acts by Mr. Garelick. Three of the predicate acts alleged are instances of wire fraud and transfers of interstate commerce of monies known to be stolen, two of the acts are fraud in connection with unauthorized access devices, and one of the acts is alleged extortion. Importantly, Plaintiffs allege that each of these predicate acts occurred in July of 2020. For some of the predicate acts, such as fraud in connection with unauthorized access devices, Plaintiffs allege generally that the acts took place "in or about July of 2020." (DE 29 ¶¶ 32–33.) For other predicate acts, Plaintiffs allege the acts occurred on specific dates. The first act where plaintiffs alleged a specific date occurred on July 15, 2020, when Ms. Wang transferred $200,000 away from Hoverzon accounts to a family trust. (*Id.* ¶ 43.) The last act where plaintiffs alleged a specific date is the threat of extortion by Mr. Garelick on or about July 24, 2020. Therefore, at a minimum, if the other acts alleged to have occurred sometime in July of 2020 took place between those dates, then the duration of these predicate acts was nine days. At most, if the acts alleged to have occurred sometime in July took place outside the specific dates provided, it appears that the duration of these predicate acts was

one month. In either case, this duration weighs heavily against a finding of closed-ended continuity.

At one point in their Amended Complaint, Plaintiffs imply that the attempted extortion is ongoing because the property has not been returned and Mr. Garelick is still trying to use it as leverage in the divorce proceeding. (DE 29 ¶ 87.) However, when determining duration, Courts look to the date the underlying predicate act occurred on. *See Jennings v. Auto Meter Products Inc.*, 495 F.3d 466 (7th Cir. 2007) (finding that even where plaintiff implied the fraud was an ongoing act, that "the alleged misrepresentation was a singular predicate act"). Under 18 U.S.C. 1951(b)(2), extortion requires "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. 1951(b)(2). The only threat specifically alleged took place on July 24, 2020. Because each of the predicate acts took place in July of 2020, the Court finds that, at a maximum, the duration of the predicate acts, as alleged, was one month. Given that the Seventh Circuit has said that nine months likely does not satisfy the duration requirement, the Court finds this duration weighs heavily against a finding of closed-ended continuity.

Additionally, each of the other *Morgan* factors — the number and variety of predicate acts, the number of victims, the presence of separate schemes, and the occurrence of distinct injury — weighs against a finding of closed-ended continuity.

First, the Court finds that the number and variety of predicate acts does not support Plaintiffs' argument. Plaintiffs allege only six predicate acts, which is a relatively small number. *See Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 52 F. Supp. 2d 913, 919 (N.D. Ill. 1999) (describing three alleged predicate acts as a "minimal amount."); *see also Juergensmeyer v. Behme*, No. 06-3088, 2007 WL 4233135, at *4 (C.D. Ill. Nov. 29, 2007) (finding that the

"number and variety of predicate acts" fails to support Plaintiff's "position because only three predicate acts occurred and all of those related to mail and wire fraud."). Additionally, where each predicate act is intended to have the same effect, Courts have attributed little weight to this factor. *See Gupta v. St. Margaret Mercy Healthcare Ctrs., Inc*., No. 2:95-CV-310, 1998 WL 34360626, at \*10 (N.D. Ind. Apr. 22, 1998) (finding that the number and variety of predicate acts was "lacking" because "[e]ven if the plaintiffs had been able to plead mail fraud, wire fraud and extortion sufficiently, each of the alleged actions was intended to have exactly the same effect"); *see also Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 942 (N.D. Ill. 2002) ("In the instant case, the multiplicity of predicate acts is not an indication of the continuity of the underlying fraudulent activity" because it "relates back to the overall scheme to embezzle funds. . . . ."). Each of the six predicate acts Plaintiffs allege relate back to the overall scheme to gain leverage and generate excess fees in Ms. Wang's divorce proceeding against Mr. Zhu. Given that this is an insubstantial number of predicate acts which were all intended to have the same effect, the Court finds that this factor weighs against a finding of close-ended continuity.

The number of victims also does not support a finding of closed-ended continuity. The only victims alleged are 3BTech and its two subsidiaries, DC 3B and Hoverzon. Where the only victims alleged are a company and its affiliates, this weighs against a finding of closed-ended continuity. *See Union Fed. Bank v. Howard*, No. 1:05-CV-00031, 2005 WL 2031060, at \*8 (N.D. Ind. Aug. 23, 2005) (holding that where "the alleged scheme involved only Union Federal and its subsidiary" this "undisputedly fares worse in the analysis."). Additionally, even if the companies were to be considered separately, three victims is still a relatively small number. *See Katris v. Doherty*, No. 01 C 6885, 2001 WL 1636914, at \*9 (N.D. Ill. Dec. 19, 2001) ("[T]his court does not believe that three victims constitutes a large number of victims . . . .").

There is also not a presence of separate schemes or distinct injuries. Plaintiffs allege Mr. Garelick engaged in a scheme to "increase leverage and generate excessive legal fees" in Ms. Wang's litigation against Mr. Zhu. (DE 29 ¶ 88.) However, this is the only scheme alleged by Plaintiffs. Additionally, while Plaintiff would like every individual predicate act to constitute a distinct injury, each injury stems from substantially similar predicate acts. The Seventh Circuit has indicated that injuries are not distinct where they stem from "similar predicate acts." *See Vicom, Inc.*, 20 F.3d at 782 (finding injuries were not distinct where "they stem[med] from the same original contract and similar predicate acts.") Here, five of the acts were crimes of fraud where money was allegedly improperly transferred or used by Ms. Wang, at the direction of Mr. Garelick. Additionally, Plaintiffs allege that all six predicate acts were in furtherance of Mr. Garelick's scheme to use the assets as leverage in Ms. Wang's divorce proceeding. Due to these similarities, the Court believes that the injuries suffered are not distinct.

Therefore, after considering the *Morgan* factors, the Court finds that the Amended Complaint cannot support a finding of closed-ended continuity.

Next, the Court examines whether the Plaintiffs can fulfill the continuity prong by establishing open-ended continuity. The open-ended continuity inquiry "focuses not on what acts occurred in the past but on whether a concrete threat remains for the conduct to continue moving forward." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 337 (7th Cir. 2019). There are three situations that satisfy open-ended continuity: "when (1) 'a specific threat of repetition' exists, (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" *Empress Casino Joliet Corp.*, 831 F.3d at 828 (quoting *Vicom, Inc.*, 20 F.3d at 782). While duration is relevant to closed-ended continuity, "open-ended continuity may

satisfy the continuity prong of the pattern requirement regardless of brevity." *Vicom, Inc.*, 20 F.3d at 782.

Plaintiffs allege in their complaint that an open-ended continuity existed for two reasons: (1) that there is a threat of Mr. Garelick repeating racketeering activity in the future; and (2) that this is Mr. Garelick's regular way of doing business. (DE 29 ¶¶ 89–90.) However, Plaintiffs do not allege that MOLM is a long-term association that exists for criminal purposes.

First, the Court believes that there is not a specific threat of repetition for the indefinite future. The Seventh Circuit has "repeatedly held that schemes fail to satisfy open-ended continuity where they have a 'natural ending point.'" *See Empress Casino Joliet Corp.*, 831 F.3d at 829. For example, in *Empress Casino Joliet Corp.*, the Court found that a scheme to bribe a governor to secure enactment of a new law did not pose a threat of open-ended continuity because the scheme had a natural ending point when the bill was signed into law. *Id; see also Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990) (finding that no open-ended continuity existed because the "purpose of the allegedly fraudulent scheme was to pay [the defendant's] loan," and there was "no evidence it would have been repeated in the future," making the scheme "short-lived." ); *see also Roger Whitmore's Auto. Servs., Inc. v. Lake Cty.*, 424 F.3d 659, 674 (7th Cir. 2005) (holding that there was no open-ended continuity "because the alleged scheme [to raise funds for a Sheriff's campaign and retire debt for that campaign] had a natural ending point when the [Defendant] was elected sheriff and he retired the debt accrued in that campaign.").

Similar to those cases, it appears to the Court that there is a clear natural ending point to this scheme. Plaintiffs are alleging a scheme that Mr. Garelick fraudulently obtained property from Mr. Zhu's companies "in an effort to increase leverage" in the divorce proceeding and

generate excessive legal fees. (DE 29 ¶ 88.) Once the divorce proceeding ends, the scheme would appear to be at its natural ending point. If the couple is divorced, Mr. Garelick would no longer need to take property from these companies in order to use as leverage against Mr. Zhu. The scheme would simply be complete.

The Court also does not believe that Plaintiffs have adequately alleged that this is Mr. Garelick's regular way of doing business. This method of demonstrating open-ended continuity requires more than alleging that the defendant committed other acts of "mere common law fraud." *Vicom, Inc.*, 20 F.3d at 783. Instead, it requires that the Plaintiffs allege that "*predicate acts*" of racketeering are "part of the RICO defendant's regular way of conducting an ongoing business." *Id.* (emphasis added) (citing H.J. *Inc.*, 492 U.S. at 242–43.)

In support of their argument that this was Mr. Garelick's regular way of doing business, Plaintiffs direct the Court to their allegation that they "understand that Garelick has been accused of and/or litigated with other victims based on this very same or similar pattern of activity" and that he "inserts arbitration clauses in his retainer agreements in a deliberate effort to keep all the accusations against him private." (DE 29 ¶ 89; DE 33 at 23.) The Court believes that these factual allegations are insufficient under Rule 9(b). Merely stating that they "understand" he has been accused and/or litigated with other victims does not indicate "the time, place and content of the misrepresentation [or] the method by which the misrepresentation was communicated to the plaintiff." *Uni-quality, Inc. v. Infotrax, Inc.*, 974 F.2d 918 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 927 F.2d 988, 992–93 (7th Cir. 1992).

To Plaintiffs' credit, in their response to Mr. Garelick's motion to dismiss, they do recognize that a "threat of continuity" cannot be alleged with general statements, but rather with "particular allegations detailing the content of the communications . . . ." (DE 33 at 23.)

However, in an attempt to justify their barebones allegations, Plaintiffs then assert in their response that "it is difficult to find this detailed content of his communications *at this stage of the proceedings* (i.e., before discovery) because Garelick inserts *arbitration clauses* in his retainer agreements in a deliberate effort to keep accusations against him private." *Id.* The Court finds this particular explanation deficient.

The Seventh Circuit has made it clear that fraud cannot be pled solely on information and belief, unless "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 443 (7th Cir. 2011) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974, F.2d 918, 924 (7th Cir. 1992). While plaintiffs pleading solely on "information and belief" at this preliminary stage do not need to provide all the information required to succeed on the merits, they must "show that the missing pieces are outside of its control" and point to "some firsthand information to provide grounds to corroborate its suspicions." *Id.* at 444–46. These requirements ensure "that a plaintiff [has] some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other purposes." *See Uni\*Quality, Inc.*, 974 F.2d at 924.

The Court believes that Plaintiffs have not shown inaccessibility or provided grounds for their suspicion that Mr. Garelick has been accused of or litigated very similar patterns of activity.

First, the Court finds the inaccessibility argument implausible. Plaintiffs claim that information showing Mr. Garelick engaged in the "very same or similar pattern" of fraud is inaccessible due to an arbitration clause used by Mr. Garelick. However, Mr. Garelick is being accused of a scheme of working *with* his client, Ms. Wang, to take property away from her

husband's companies to use as leverage in a divorce proceeding. (DE 29 ¶¶ 9, 24, 88.) Given that the scheme alleged concerns Mr. Garelick directing clients to victimize third parties, it's unclear how an arbitration agreement would do anything to help conceal accusations of "similar patterns" of fraudulent activity. After all, an arbitration agreement would not bind any party without their consent. *See Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665–66 (7th Cir. 2009) (writing that "contracts bind only the parties" and that "[a]rbitration agreements are optional and enforced just like other contracts.") Given that third-parties would not be bound by these agreements, the Court finds that Plaintiffs did not adequately allege inaccessibility.

Even if Plaintiffs had adequately alleged that this information was inaccessible, they still have not provided the grounds for their suspicions. The grounds for Plaintiffs' suspicions are less detailed than other cases the Seventh Circuit has affirmed dismissal over. For example, in *U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy*, the Plaintiff brought a claim under the False Claims Act alleging that pharmacies in six different states committed fraud by charging Medicare and Medicaid for drugs they never delivered. 772 F.3d 1102, 1107–08 (7th Cir. 2014). In that case, Plaintiff was a pharmacist working at the pharmacies who allegedly committed the fraud. *Id.* at 1108.The Plaintiff alleged that a confidential witness in one of the six states "observed the practice in *that* state." *Id.* at 1108 (emphasis added). However, the Seventh Circuit found that the allegations were "insufficient because there is nothing to indicate when [the Pharmacy] directed the charges not be reversed, whether the [Plaintiff] was present, and how the [Plaintiff] learned that the charges were never reversed." *Id.* Failure to specify *how* the Plaintiff came about the information that pharmacies in the five other states were not reversing charges for medicine that was never picked up made his pleading insufficient under Rule 9(b). *Id.* ("[I]f

he can't allege how he learned that the charges had not been reversed, what basis has he for alleging they were reversed?")

The instant case demonstrates similarly sparse pleading. Like in *U.S. ex rel. Grenadyor*, Plaintiffs do not allege in their complaint how they learned similar fraud had been committed by Mr. Garelick. They simply allege that they "understand that Garelick has been accused of and/or litigated with other victims based on this very same or similar pattern of activity." (DE 29 at 17.) But what makes them understand this? *U.S. ex rel. Grenadyor* indicates that the failure to specify *how* Plaintiffs came about this information renders the pleading insufficient under Rule 9(b).

 If anything, the allegations here are even more insufficient than in *U.S. ex rel. Grenadyor*. There, the Complaint at least described the content of the fraud, provided particular occasions that fraud was committed, and alleged that one witness saw the practice. Here, Plaintiffs do not describe what the "similar pattern" of fraud consists of, allege any particular occasions the "similar pattern" of fraud occurred, or explain how they came to understand this "similar pattern " of fraud was committed. These insufficiencies render Plaintiffs' pleading of Mr. Garelick engaging in other "similar patterns" of fraud inadequate under Rule 9(b).

The Court also notes that allowing these barebones allegations to open the door into the discovery phase would go against the purposes of Rule 9(b). "The rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing strike suits and fishing expeditions; and (3) providing notice of the claim to the adverse party." *Vicom, Inc.*, 20 F.3d at 777 (quotations omitted). In effect, Rule 9(b) stands for the proposition that serious accusations deserve especially thorough pleadings. *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) ("People should be discouraged from tossing such accusations into complaints in order to induce advantageous settlements or for other ulterior purposes.")

Plaintiffs' allegation that Mr. Garelick engaged in other similar patterns of fraud is a serious accusation that could cause serious harm to Mr. Garelick's professional reputation. But they do not allege, in the remotest detail, when that similar fraud took place, the content of that fraud, or the parties to that fraud. This type of skeletal pleading is problematic considering the serious accusations being made, and does not pass muster under Rule 9(b).

Without properly alleging that Mr. Garelick engaged in any other similar predicate acts outside those in the month of July of 2020, the Court does not believe that it is permissible to infer that this was Mr. Garelick's regular way of doing business. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.* 831 F.3d 815, 831 (7th Cir. 2016) (finding that open-ended continuity was not demonstrated on summary judgment where the plaintiffs presented "evidence of unlawful activity related to only" a singular predicate act in 2008.)

Therefore, under both the open-ended continuity test and the closed-ended continuity test, Plaintiffs have failed to demonstrate the threat of future harm necessary to bring a RICO claim. Accordingly, the Court dismisses Plaintiffs RICO claim under §1962(c).

### (4)     RICO claim under 18 U.S.C § 1962(d)

To state a RICO conspiracy claim against a defendant under § 1962(d), the plaintiffs had to (1) identify a proper enterprise, (2) identify the defendant's association with that enterprise, and (3) allege that "the defendant knowingly joined a conspiracy, the objective of which was to operate that enterprise through a pattern of racketeering activity." *United States v. Tello,* 687 F.3d 785, 794 (7th Cir. 2012). The defendant does not need to agree to personally commit two specific predicate acts of racketeering . *Id.* at 792–93.

As discussed above, it is not plausible, based on the alleged predicate acts in July of 2020, that Mr. Garelick engaged in a pattern of racketeering activity. The Seventh Circuit has

"'explained that 'the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute.'" *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). Having failed to plead a pattern of racketeering under § 1962(c), it is similarly implausible that Mr. Garelick had the objective to engage in a pattern of racketeering.

Accordingly, the RICO conspiracy allegations under § 1962(d) must also be dismissed.

### *(5)    State Law Claims*

Plaintiffs also bring two State law claims. They claim that Mr. Garelick committed tortious conversion in violation of Indiana Code § 35-43-4-3 by directing Ms. Wang to transfer funds to her own personal bank account, directing her to exert control over other assets, and then directing her to refuse to return those funds and assets to Plaintiffs. (DE 29 ¶¶ 53–61.) They also claim that Mr. Garelick committed tortious interference by directing transfers which interfered with a business relationship of DC 3B. (*Id.* ¶¶ 62–68.)

In their Amended Complaint, the Plaintiffs pleaded that the Court had original jurisdiction over the RICO claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. (DE 29 ¶¶ 6–7.) Because the Court dismisses the RICO claims over which it has original jurisdiction for failure to state a claim upon which relief can be granted, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

The Court dismisses the state law claims without prejudice. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir.1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

**D.     Conclusion**

For the foregoing reasons, Mr. Garelick's motion to dismiss (DE 30) is granted. Accordingly, Plaintiffs' federal RICO claims are DISMISSED WITH PREJUDICE, while their remaining state law claims are DISMISSED WITHOUT PREJUDICE and with leave to file, as appropriate, in state court. [2]

SO ORDERED.

ENTERED: November 9, 2021

_____
/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

[2] It is "ordinarily true that a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1007–08 (7th Cir. 2019) (citation omitted) (internal quotation marks omitted). However, the Court does not have to "give leave to amend a complaint where a party does not request it or suggest to the Court the ways in which it might cure the defects." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018). Plaintiffs have not asked for leave to amend or suggested ways in which they can fix the defects in their complaint. To the contrary, Plaintiffs admitted in their response that they cannot, without "difficulty," allege the "detailed content" of other similar instances of fraud committed by Mr. Garelick. (DE 33 at 23.) They further suggest they will need discovery to get said detail. (*Id.*) The lack of a request for leave to amend, coupled with these suggestions that any amendment will be futile, make dismissing the RICO claims with prejudice appropriate.